IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMANDA SCIOLLA, et al.,            :    CIVIL ACTION
                                   :    NO. 11-5604
    Plaintiffs,                    :
                                   :
        v.                        :
                                   :
WEST BEND MUTUAL INSURANCE CO.,    :
                                   :
    Defendant.            :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        DECEMBER 18, 2013

## Table of Contents

I.   INTRODUCTION.............................................. 2
II.  BACKGROUND................................................ 3
III. STANDARD OF REVIEW....................................... 5
IV.  DISCUSSION................................................ 8
     A.   Applicable Law....................................... 8
     B.   The Parties' Burdens................................ 10
          1.   Plaintiff's Burden of Establishing Coverage.... 10
          2.   Insured's Burden of Establishing the Applicability
          of Exclusion CG2101................................ 11
          a.   Elements of Exclusion CG2101.................. 12
          b.   Ambiguity of Sponsor.......................... 15
     C.   Appropriateness of Summary Judgment................. 19
     D.   Defendant's Duties to Defend and Indemnify.......... 21
V.   CONCLUSION............................................... 23

**I.    INTRODUCTION**


Plaintiffs Amanda Sciolla and Meredith Hopkins (collectively, "Plaintiffs") brought this suit seeking declaratory relief against West Bend Mutual Insurance Company ("Defendant").  Plaintiffs' Complaint relates to a previous action filed against Buckeye Donkey Ball, L.L.C. ("Buckeye").[1] See Am. Compl., Ex. E, Compl. Against Buckeye (hereinafter, "Buckeye Compl."), ECF No. 28-5.  Defendant is Buckeye's insurance carrier.  Defendant alleges that, per its policy, Defendant has no duty to defend or indemnify Buckeye in the previously filed action.  Answer Am. Compl., Feb. 20, 2013, ECF No. 29.  Buckeye subsequently assigned its rights to Plaintiffs to assert claims directly against Defendant.  See Am. Compl., Ex. F, Assignment of Rights, Aug. 20, 2011, ECF No. 28-2.  Thus, Plaintiffs' Complaint seeks a declaration that Defendant has a duty to defend and indemnify Buckeye against the claims that Plaintiffs filed in the previous suit.  Am. Compl.  Defendant answered Plaintiffs' Complaint denying all allegations and asserting a variety of affirmative defenses.  Answer Am. Compl.

---

[1]      That complaint alleges claims of, inter alia, negligence.

Pending before the Court are the parties' cross-motions for summary judgment.  See Def.'s Mot. Summ. J., Mar. 1, 2013, ECF No. 30-8; Pls.' Mot. Summ. J., ECF No. 31.  For the reasons that follow, the Court will grant Plaintiffs' Motion for Summary Judgment and, correspondingly, deny Defendant's Motion for Summary Judgment.

## II.  BACKGROUND

Plaintiffs are both teachers in the Pennsbury School District.  Defendant is an insurance company that issued an insurance policy to Buckeye Donkey Ball, L.L.C. ("Buckeye").  See Am. Compl., Ex. B, Ins. Policy, ECF No. 28-2.  Buckeye puts on Donkey Ball Shows that involve people riding donkeys while playing basketball.  Relevant here, Buckeye put on a Donkey Ball Show on November 13, 2009, at the Charles Boehm Middle School in Pennsbury School District.  Plaintiffs allege they participated in this show and were thrown off their donkeys, sustaining injuries.  See Am. Compl. ¶¶ 6-7.  Plaintiffs then filed a personal injury suit against Buckeye.  See Am. Compl. ¶ 12; see also Buckeye Compl.

Prior to the incident, Buckeye purchased an insurance policy from Defendant.  See Ins. Policy.  Defendant, however, disclaims any duty to defend or indemnify Buckeye, citing a

policy provision excluding insurance coverage.  <u>See</u> Def.'s Mot. Summ. J., Ex. D, CG2101-Sports or Athletic Participant Exclusion (hereinafter, "Exclusion CG2101") ("With respect to any operations shown in the Schedule, this insurance does not apply to 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.").[2]  In a letter to Buckeye, dated March 31, 2010, Defendant disclaimed liability under Exclusion CG2101.  Am. Compl., Ex. C., Disclaimer of Duty to Defend or Indemnify ("Disclaimer Letter"), March 31, 2010, ECF No. 28-3.  Thereafter, Buckeye assigned its rights under the insurance policy to Plaintiffs.  <u>See</u> Assignment of Rights.

Plaintiffs brought this action seeking declaratory judgment, asserting that Defendant has a duty to defend and indemnify Buckeye.  Following the Court's Order Vacating its Earlier Memorandum Opinion and Order (ECF No. 26),[3] Defendant moved for summary judgment.  Def.'s Mot. for Summ. J., ECF No.

---

[2]     CG2101 is a standardized insurance exclusion developed by Insurance Services Office, Inc.

[3]     Plaintiffs attached the incorrect insurance policy to their initial complaint against Defendant.  In response, Defendant did not attach a copy of the correct policy, and attached and relied upon an exclusion to a different policy.  As a result, the Court was asked to construe the language of an incorrect policy and exclusion.  At the request of both parties and due to the incorrect policy having been submitted to the Court, the Court vacated the earlier Memorandum Opinion (ECF No. 14) and Order (ECF No. 15).

30.  In turn, Plaintiffs also filed for Summary Judgment and
filed a response to Defendant's Motion for Summary Judgment (ECF
No. 34).  Defendant has responded to Plaintiffs' Motion for
Summary Judgment (ECF No. 33).  The parties' motions are now ripe
for disposition.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if there are no genuine
disputes of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A motion
for summary judgment will not be defeated by 'the mere existence'
of some disputed facts, but will be denied when there is a
genuine issue of material fact."  Am. Eagle Outfitters v. Lyle &
Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  A fact is
"material" if proof of its existence or non-existence might
affect the outcome of the litigation, and a dispute is "genuine"
if "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts
in the light most favorable to the non-moving party.  "After
making all reasonable inferences in the nonmoving party's favor,
there is a genuine issue of material fact if a reasonable jury

could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

The standard for addressing cross-motions for summary judgment remains the same as if there were only one motion filed. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).[4]  When confronted with cross-motions for summary judgment the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)).

---

[4]      "[C]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

In a diversity case, when faced with a motion for summary judgment, the federal courts follow federal law on issues of procedure but apply the substantive rule of decision from state law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005).  The parties rely on Pennsylvania law in their written submissions to the Court,[5] which indicates their agreement that Pennsylvania law governs.  See Mellon Bank v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1005 n.1 (3d Cir. 1980) (applying Pennsylvania law to case where parties do not dispute its application).  Accordingly, the Court will apply Pennsylvania law.

---

[5]         With the exception of three cases, the parties cite exclusively to case law from Pennsylvania, the Third Circuit, and the Eastern District of Pennsylvania.  The other cases are from three different jurisdictions and are presented as persuasive authority on how to interpret Exclusion CG2101.

**IV.  DISCUSSION**

    A.   <u>Applicable Law</u>

       The parties' motions require the Court to interpret the terms of Defendant's insurance contract with Buckeye, including various provisions in the general insurance policy as well as Exclusion CG2101.

       Interpreting an insurance policy "is a question of law" for the Court to determine.  <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 897 (Pa. 2006) (citing <u>401 Fourth St. v. Investors Ins. Grp.</u>, 879 A.2d 166, 170 (Pa. 2005).  During this interpretation, the Court must examine the contract in its entirety.  <u>Riccio v. Am. Republic Ins. Co.</u>, 705 A.2d 422, 426 (Pa. 1997).  The goal in interpreting a policy is to "ascertain the parties' intentions as manifested by the policy's terms."  <u>Kvaerner</u>, 908 A.2d at 897.  To that end, "when the language of the policy is clear and unambiguous, a court is required to give effect to that language."  <u>401 Fourth St.</u>, 879 A.2d at 171.

       Where the language is ambiguous, however, giving effect to contractual language requires a different approach.  Ambiguity exists in a contract if the "contractual terms . . . are subject to more than one reasonable interpretation when applied to a particular set of facts."  <u>Madison Const. v. Harleysville Mut.</u>

Ins., 935 A.2d 100, 106 (Pa. 1999).  Ambiguous insurance policy provisions are "construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage."  Id.; see also Mohn v. Am. Cas. Co. of Reading, 326 A.2d 346, 351 (Pa. 1974) (stating that where a provision in an insurance agreement is ambiguous, "any ambiguity in the language of the document is to be read in a light most strongly supporting the insured").

Under Pennsylvania law, "the insured bears the [initial] burden of proving facts that bring its claim within the policy's affirmative grant of coverage."  Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996) (citation omitted).  Where an insurer raises a defense based on a policy exclusion, the burden shifts and the insurer bears the burden of establishing the applicability of that exclusion. Madison Const., 935 A.2d at 106; see also Koppers, 98 F.3d at 1446 ("the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage," because "disclaiming coverage on the basis of an exclusion is an affirmative defense.").

B.   <u>The Parties' Burdens</u>[6]


1.   <u>Plaintiff's Burden of Establishing Coverage</u>


In the Amended Complaint, Plaintiffs allege that, at the time of the incident, Buckeye was insured under a commercial general liability insurance policy issued by Defendant, policy number NSK 0887822 02.  <u>See</u> Am. Compl. ¶ 15 (citing Ins. Policy). Plaintiffs claim that the policy covered bodily injury or property damage for which Buckeye becomes legally obligated to pay, specifically including injuries sustained during Donkey Ball Shows.  <u>See</u> Am. Compl. ¶ 16 (citing Ins. Policy, Commercial General Liability Coverage Form, Section 1).  Defendant admits that the insurance policy was in force.  <u>See</u> Answer Am. Compl. ¶ 15-16.

Defendant does not explicitly state that the insurance coverage, absent Exclusion CG2101, would cover the injuries sustained by Plaintiffs.  Defendant's Disclaimer of Duty to Defend or Indemnify ("Disclaimer Letter") and Motion for Summary Judgment, however, rely on the presence of Exclusion CG2101 to deny coverage and do not argue that absent Exclusion CG2101

---

[6]    Both parties agree that the insurance contract and Exclusion CG2101 are the relevant instruments in this case. Therefore, there is no genuine issue of fact concerning the authenticity of the insurance contract or Exclusion CG2101.

Defendant would otherwise not have a duty to defend and indemnify.  See Def.'s Br. 8-10; Disclaimer Letter.  In the Disclaimer Letter, Defendant stated that the Policy "issued to you by [Defendant] contains [the Disclaimer], which specifically excludes coverage for bodily injury to any person while practicing for or participating in Donkey Ball and similar or related activities."  See Disclaimer Letter 1.  Defendant continued stating "[a]ccordingly, we disclaim any duty to defend or indemnify [Buckeye] . . . for any claim brought as a result of participation in the event."  Id.  Given these statements, the Court concludes that Defendant effectively concedes that Plaintiffs have met their initial burden of establishing coverage under the policy.

> 2.  Insured's Burden of Establishing the Applicability of Exclusion CG2101

The Court will now determine if Defendant has met its burden of proving the applicability of an exclusion.  See State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law).[7]  Defendant claims that

_____

[7]      "Ordinarily in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of

Exclusion CG2101 specifically excludes coverage for Plaintiffs'
claim.  See Def.'s Br. 8-10; see also Disclaimer Letter.
Exclusion CG2101 states: "With respect to any operations shown in
the Schedule, this insurance does not apply to 'bodily injury' to
any person while practicing for or participating in any sports or
athletic contest or exhibition that you sponsor."

             a.     Elements of Exclusion CG2101


        The Court will next undertake an analysis of Exclusion
CG2101 to determine if Defendant has established that it applies
to Plaintiffs' claims.  As a preliminary matter, neither party
has cited to cases arising within Pennsylvania or this Circuit
that have interpreted the specific language of Exclusion CG2101,
nor is the Court aware of any such cases.  Because Exclusion
CG2101 is a commonly used boiler plate provision, however, there
are cases within other jurisdictions that have undertaken an
examination of its language.  The parties have, in briefing this
issue, relied on such cases and the Court in undertaking its
examination will examine such cases as well.

_____

demonstrating that a policy exclusion excuses the insurer from
providing coverage if the insurer contends that it does."  Estate
of Mehlman, 589 F.3d at 111.

The parties cite to <u>Zurich Reinsurance (London) Ltd. v.</u> <u>Westville Riding Club, Inc.</u>, 82 F. Supp. 2d 1254 (E.D. Okla. 1999) <u>aff'd sub nom.</u> <u>Zurich Reinsurance (London) Ltd. v. Remaley</u>, 203 F.3d 837 (10th Cir. 2000), wherein the plaintiff was an unlucky rodeo attendee who was injured when he decided to play a game called "Money the Hard Way." <u>Id.</u> at 1256. In "Money the Hard Way," spectators are invited to come into the arena and win $50 by removing a ribbon or string that was tied to the horns of a bull. <u>Id.</u> The plaintiff was the only spectator foolish enough to accept the invitation to do so. <u>Id.</u> The plaintiff was injured when he was head butted by the bull. <u>Id.</u> The District Court in <u>Zurich</u> articulated the elements necessary to establish the applicability of Exclusion CG2101 as follows:

> 1. That the event in which the person was injured was a contest or exhibition;
> 2. That the contest or exhibition was of an athletic or sports nature;
> 3. That the contest or exhibition was sponsored by the named insured; and
> 4. That the injured person was practicing for or participating in the contest or exhibition at the time of the injury.

<u>Id.</u> (citing <u>Garcia</u>, 576 So. 2d at 976–77; <u>Jefferson Ins. Co. of</u> <u>New York v. Sea World of Florida, Inc.</u>, 586 So. 2d 95, 97 (Fla.

App. 1991)).[8]  Under Zurich, for Exclusion CG2101 to apply,
Defendant must establish that all four elements are satisfied.

        Plaintiffs contest that Buckeye was the sponsor of the
Donkey Ball Show (Zurich element three) and that this was sport
or athletic event (Zurich element two).  See Pls.' Br. 6-8.
Because the Court ultimately concludes that Defendant cannot
establish the third prong of Zurich, that the Donkey Ball Show
was sponsored by Buckeye, the Court will only analyze that
element.[9]

---

[8]        The parties also cite to Nautilus Ins. Co. v. Jesse
James Festival, Inc., 269 S.W.3d 442 (Mo. Ct. App. 2008), which
provides a nearly identical articulation of the elements.  The
insurance company in Nautilus had also used Exclusion CG2101.
The Nautilus court, after doing its own examination of cases
applying Exclusion CG2101, determined that, for an insurer to
exempt itself of liability under Exclusion CG2101, the insurer
must establish that:

        (1) the event in which the individual was injured was a
        contest or exhibition;
        (2) the contest was of an athletic or sports nature;
        (3) the named insured sponsored the contest; and
        (4)  the  injured  person  was  practicing  for  or
        participating in the contest at the time of the injury.

Id. at 446.  An examination of the present case through either
formulation would consist of the same analysis and bear the same
conclusion.

[9]        It should be noted Defendant may also be unable to
satisfy the requirements of element two.  That analysis is,
however, unnecessary.

b.      Ambiguity of Sponsor

To construe the applicability of the term sponsor, the Court must next determine whether the term is ambiguous. Plaintiffs assert that sponsor is ambiguous.  Pls.' Br. 8-9.  On the other hand, Defendant disagrees and claims that sponsor is not an ambiguous term.  Def.'s Br. 10-12.

In determining whether the term sponsor is ambiguous, the Court first construes "[w]ords of common usage . . . according to their natural, plain, and ordinary sense."  Standard Venetian Blind Co., 469 A.2d at 566; see also Liberty Mut. Ins. Co., 689 F.3d at 293.  To accomplish this, the Court "may consult the dictionary definition of a word to determine its ordinary usage."  Standard Venetian Blind Co., 469 A.2d at 566; see also Liberty Mut. Ins. Co., 689 F.3d at 293.

Defendant relies on Merriam-Webster's definition of sponsor, which it quotes as "a person or organization that pays for or plans and carries out a project or activity."  Def.'s Br. 10 (citation omitted).  The Court notes that Defendant only cites part of the relevant entry.  The full definition given by Merriam-Webster is: "a person or an organization that pays for or plans and carries out a project or activity; especially: one that pays the cost of a radio or television program usually in return for advertising time during its course."  Merriam-Webster's

15

Collegiate Dictionary, 1140 (9th ed. 1983). Looking at the examples provided online by Merriam-Webster, the most applicable example of a sentence is "[t]he tournament is sponsored by local businesses."  Merriam-Webster Dictionary Online, http://www.merriam-webster.com/dictionary/sponsor.

Not all dictionaries define sponsor, as it pertains to this set of facts, in the same way as Merriam-Webster.  See Standard Venetian Blind Co., 469 A.2d at 566; see also Liberty Mut. Ins. Co., 689 F.3d at 293.  For example, the American Heritage Dictionary defines sponsor, in relevant part, as "[o]ne that finances a project or an event carried out by another person or group, especially a business enterprise that pays for radio or television programming in return for advertising time."  American Heritage Dictionary of the English Language, 1679, (4th ed., 2009).  Other dictionaries defines sponsor as "[o]ne that finances a project or an event carried out by another," The American Heritage College Dictionary, 1315 (3d ed. 1993), or, as a verb, "to pay or contribute towards the expenses of a radio or television program, a performance, or other event or work in return for advertising space or rights."  Oxford English Dictionary, 306 (2d ed. 1989).

Courts that have interpreted the meaning of sponsor in the context of Exclusion CG2101, have also come to varying conclusions.  In Nautilus Ins. Co. v. Jesse James Festival, Inc.,

269 S.W.3d 442 (Mo. Ct. App. 2008), a case relied upon by Defendant, the Missouri Court of Appeals, Western District, held that sponsor as used within the language of Exclusion CG2101 was unambiguous.  Id. at 446.  In Nautilus, the Jesse James Festival Committee ("JJF") and the Kearney Optimist Club ("KOC") paid Rockin' K Productions ("Rockin' K") to produce a rodeo and JJF and KOC were listed as sponsors (and thus assumed the role of sponsor).  The Nautilus plaintiff was a spectator who participated in a rodeo competition called the Circle of Fear. In the competition, participants wear a flak jacket and stand within a chalk circle in the arena while a live and raging bull is released into the arena.  The plaintiff was violently attacked by the bull, and he later sued JJF and KOC.  Id. at 144.  JJF and KOC's insurance policy included Exclusion CG2101 as an endorsement.  The Nautilus court determined that the language of Exclusion CG2101, in particular the word sponsor, was unambiguous as applied to JJF and KOC, the sponsors of the competition. Accordingly, the court held that the insurance company did not have a duty to defend or indemnify.  But see Spence-Parker v. Md. Ins. Grp., 937 F. Supp. 551, 556 (E.D. Va. 1996) (holding that "'sponsor' is amenable to varying definitions" within the context of Exclusion CG2101).

In the present case, and as set forth above, the broad definition of sponsor proposed by Defendant is not universally

accepted.  In fact, the Merriam-Webster definition, relied upon by Defendant, encompasses two distinct concepts of sponsor.  The first concept is that of a person or an organization <u>that pays for</u> a project or activity.  This role is that which Plaintiffs assert was performed by the FCCLA.  The second concept is of a person or an organization <u>that plans and carries out</u> a project or activity.  The latter concept is the role which Defendant alleges was performed by Buckeye.  The <u>Nautilus</u> court, which Defendant also relies on, applied the first definition, paying for an activity, to find that the term sponsor was unambiguous.  Furthermore, the concept of sponsor as an organization which pays a third party, either to produce an activity or to advertise, is generally included as a definition for sponsor, particularly as sponsor would be used under the present set of facts.

      As it would be applied to this set of facts, the most common dictionary definition for the term sponsor is one that finances a project or an event carried out by another person or group.  That is the definition used by the court in <u>Zurich</u> (which Defendant offers as relevant case law), present in the majority of dictionary definitions of sponsor, and used in Buckeye's agreement with the FCCLA.[10]  <u>See</u> Am. Compl., Ex. E, Contract

---

[10]      The Court considers the use of sponsor in the FCCLA contract as an example of the plain, ordinary meaning of the word, much like consulting a dictionary.  <u>See Standard Venetian</u>

Between Buckeye and FCCLA ("Contract"), Feb. 17, 2009, ECF No. 28-1.  Given the lack of a universally accepted definition of the term sponsor by dictionaries and by the courts, the Court concludes that the term is subject to more than one interpretation when applied to the present set of facts, and it is therefore ambiguous.  See Madison Const., 935 A.2d at 106.

        As sponsor is ambiguous under the present set of facts and the rule of construction requires that ambiguity in an insurance contract be construed against the insurance company, see id., Defendant cannot establish the third Zurich prong and thus fails to satisfy its burden of proving the applicability of Exclusion CG2101, see Zurich, 82 F. Supp. 2d at 1256.


    C.   Appropriateness of Summary Judgment


        Ordinarily, under Pennsylvania law, ambiguity in a contract is not to be resolved at the summary judgment stage but instead is to be reserved for the finder of fact.  See Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 469 (Pa. 2006) ("While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact."); Pines Plaza Bowling, Inc. v. Rossview,

Blind Co., 469 A.2d at 566; see also Liberty Mut. Ins. Co., 689 F.3d at 293.

Inc., 145 A.2d 672, 676 (Pa. 1958) ("[I]f the terms of a contract are ambiguous, any doubt or ambiguity must be construed against the party who wrote it and the true meaning decided by the jury and not the court." (citation omitted)).  This does not mean, however, that the Court must refrain from granting summary judgment under all circumstances where an ambiguity is present. See e.g., Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975, 982 (Pa. 2001) (granting summary judgment holding that exclusion did not apply where term in exclusion was ambiguous).

In Lititz, the Pennsylvania Supreme Court interpreted an exclusion that, inter alia, contained the term "dispersal." Id. at 977.  The Court of Common Pleas had granted summary judgment against the insurance company, finding that the exclusion did not apply because "dispersal" was ambiguous.  Id. at 979.  The Superior Court reversed, finding that there was no ambiguity.  Id.  The Pennsylvania Supreme Court reinstated the grant of summary judgment, finding that because the term "dispersal" was ambiguous and any ambiguity is to be construed against the insurance company, insurance company could not satisfy its burden in asserting the exclusion.  Id. at 982 (finding the "exclusion clause does not preclude coverage for the injuries alleged to have occurred in this case" because of the ambiguity, construed against the insurance company); see also Wagner v. Erie Ins. Co., 801 A.2d 1226, 1231 (Pa. Super. Ct.

2002) ("To prevail, Erie must prove that the language of the
insurance contract is clear and unambiguous; otherwise, the
provision will be construed in favor of the insured." (internal
citations omitted)), aff'd, 847 A.2d 1274 (2004).

　　　　The matter sub judice is analogous to the matter before
the Lititz court.  Here, Defendant, an insurance company, was
also unable to satisfy its burden and establish the applicability
of an exclusion, because it fails under the third element of
Zurich, that the contest or exhibition was sponsored by Buckeye.
Zurich, 82 F. Supp. at 1256.  Accordingly, applying Lititz,
Plaintiffs are entitled to summary judgment on Defendant's
failure to establish the applicability of Exclusion CG2101.  See
Lititz, 785 A.2d at 982.


　　　　D.　　Defendant's Duties to Defend and Indemnify


　　　　Finding that Exclusion CG2101 does not apply, the Court
next turns to determining if Defendant has a duty to defend and,
if necessary, indemnify Buckeye for Plaintiffs' claims.  "Under
Pennsylvania law, an insurer has a duty to defend if the
complaint filed by the injured party potentially comes within the
policy's coverage.  The duty to defend is a distinct obligation,
different from and broader than the duty to indemnify." Sikirica
v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. 2005).

Moreover, "[i]f the complaint avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend." Id.  The duty to defend "carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy." Gen. Acc. Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997).

Plaintiffs' complaint in Hopkins, et al. v. Buckeye Donkey Ball L.L.C., alleges facts that are within the policy's coverage. See Buckeye Compl.; Am. Compl. ¶ 12.  As Buckeye was covered by the Insurance Contract and Exclusion CG2101 does not apply, Defendant has a duty to defend. See Gen. Acc. Ins. Co. of Am., 692 A.2d at 1095.  If Plaintiffs establish liability at trial, Defendant has a duty to indemnify.

## V.    CONCLUSION

For the reasons set forth above, the Court will grant Plaintiffs' Motion for Summary Judgment requiring Defendant to defend Plaintiffs' suit and indemnify if liability is established.  For the same reason, the Court will deny Defendant's Motion for Summary Judgment.

An appropriate order follows.